James Thompson on behalf of Raymond Chow. This case involves the ineffective assistance of counsel at a number of different stages in the matter, and I think that really the key point that starts this off is with the third superseding indictment, because in that indictment is when the case changed completely. Prior to this, it was really a money laundering and sale of alcohol and cigarettes, etc. case. But with the third indictment came the murder charge against Mr. Chow in the Lung situation, and then the conspiracy to commit murder with respect to Kong, and to some extent, his girlfriend or paramour at the time, Chen, who was also killed. And at that point in time is when it really changed. And it is really at that point when things get where the ineffective assistance of counsel shows itself. Because the first thing that happened when the third superseding indictment got filed was that counsel wanted the opportunity to, or excuse me, counsel was given the opportunity to seek a continuance or to have a continuance granted in the matter because of the additional charges and the seriousness of those charges. And that was refused, and it was refused in a way in which it made no sense whatsoever. They gave him. So that does seem to be your strongest argument. I mean, I noticed you didn't talk about the, you know, the suppression of the wiretap evidence. And I was going to ask you, I mean, are there, would any of those actually, were there meritorious suppression arguments that could have been made? At least the accumulation of all of the exclusion motions and the other things that were done, yes, there would be a basis for it. Standing on its own, alone by itself, right? No, I don't think the wiretap itself would be there because there was other testimony. But the exclusion of the Kong and the Chen, if I can put them together, motion, that definitely should have been done. And the continuance, I mean, the thing about the continuance is that the AUSA at the time said, I've never seen counsel say that they're going to be ineffective if they go forward, but then at the same time say they want to go forward. And that was the turning point because at that point, without getting the continuance, they could not litigate the Lung matter in terms of investigation and preparation so that they could have impeached Mrs. Lung when she testified. They could have had other people come in and testify about the fact that Lee was a suspect from the San Francisco PD's office when they did the investigation. They didn't bring in any of that stuff because they weren't ready because that charge came late in the game. And instead of taking the continuance, advancing it. So I'm with you that, I mean, it is, that is the oddest choice that has been raised here. But don't you still have to show that it would have had a material effect in the outcome? And I, maybe you could address that because it seems like pretty overwhelming evidence of guilt. And so I'm trying to figure out where the prejudice is. Right. I understand. And I think, you know, it's a matter of if there had been investigation, there would have been a situation where the. But how do we evaluate that? Because, I mean, you're actually asking, at that point you're starting, we're already getting into a hypothetical question about whether it would have impacted it. And now you're like expanding that hypothetical to say, well, if we'd had more time, we could have come up with this and this and this. And that would have changed things. I mean, at some point we're so far removed from the actual facts, it's sort of hard to evaluate where prejudice comes into play. But I don't, I really don't think it's removed because, you know, imagine not the world as John Lennon saying, but imagine a trial. Imagine a trial without any opening statement that promised what was not produced by Mr. Sarah. Imagine a trial without the two killings, the Boston offense that was done and the volunteer or asking for volunteers to do killing from the Chong case when Mr. Chow was asked about that during cross-examination. Because had there been a continuance and had had counsel tried to litigate whether or not the Chong impeachment stuff could have come in, Mr. Chow would have been advised, if we go to trial and you testify, they are going to introduce two murders, the offense that occurred in Boston, and the fact that you volunteered or tried to get volunteers to do killings for you. Does your theory of prejudice on the continuance rest on other things that would have been done if given additional time so that it isn't just the continuance alone, it's sort of the continuance plus other things that were not done? That's correct. And so then it is, you know, a trial without the gory Kong-Chen murder evidence, which had absolutely nothing to do with the Kong murder conspiracy. It occurred a year and a half later, committed by Wing-Wu Ma, which the government knew because they were prosecuting him on the offense, and then allowed to go forward and that evidence never would have come in. It should have stopped at 2013 when the purported agreement between Mr. Lee and Mr. Chow occurred saying, yes, you should, you know, you should go ahead and go do it. Even though there's later statements of Mr. Chow saying, no, I don't want you to do anything, it's been handled. Well, that only led a jury to believe that, yeah, it was handled and he somehow could be involved in it because the government was not up front about what role the Kong and Chen killings occurred. And I'll talk about that in a second. But imagine, you know, a trial without the testimony of an ill-prepared defendant who was only guided by the hand of an individual who had never tried a federal criminal case, who had never been on the panel, who had tried one drunk driving case. He was responsible for communicating with Mr. Chow. He couldn't possibly advise him of these things. He didn't know about these things himself. Imagine a trial with counsel that read all of the discovery and was prepared for the government's case. Imagine a trial with the testimony of at least 17 witnesses who didn't testify because the proffers the defense counsel gave to the court were insufficient. Imagine a trial with a continuance of the trial that would have allowed investigation preparation and litigation. Imagine a trial with a primary lawyer having tried more than a single case. Imagine a trial without the switch of defenses from beatific, as the defense said, to really what was ultimately proved beastific. Because that's what happened because of this. And imagine if the trial was done the way it should have been done to a jury that listened to all of the evidence, asked 10 multiple questions about the evidence, requested testimony read back of key witnesses, and spent three days deliberating the case with the evidence that was presented. Well, but see that, as to your first litany, it does get, there's some speculation there. I mean, that's the problem is you're saying, well, imagine this. And it's not clear to me how probabilistic any one of those really were, even if you'd had a continuance. So that's one problem we've got to deal with. But then you say, and we also had a jury who paid close attention to this, and that seemed to hurt you because they did pay close attention to this. They looked at the evidence. They scrutinized it, and they said the evidence was overwhelming. It doesn't hurt at all because what they did is spent three days on a case that wasn't presented. There was no defense tendered up in the Lung murder. Mrs. Lung wasn't impeached. Clifton Lung wasn't called to testify. There was no impeachment of CAM by Wu who said, look, he's talking about events that occurred. I was never at those events. He's talking about a getaway driver. That's not true. There was no discussion at all about the Golden Dragon lease, which Mrs. Lung says to the officers, that, I believe, is the reason that this happened. That lease was involved with Mr. Lee, not Mr. Chow. Defense counsel never brought out any of that, and it was in the evidence. So you can imagine what that jury who deliberated and took strongly to those issues would have done had there been the promise that Mr. Serra made, which is, in opening statement, we're going to present you the evidence of Mr. Lee and his involvement in this case and how it would have made a difference and how my client is innocent, and not a single word, not a drop. And if you look at his argument in total, if you look at it, the defense is only this. Cooperators lie. Cooperators will do anything. Cooperators will sell the soul of their mother. At the same time, he puts on his client to testify and is impeached with the Chong evidence, where Chow was a cooperator. So the only defense he had, as weak as it was, either didn't work at all or undermined his own client's testimony. I hear you, and we hear these arguments all the time, because obviously it's very easy to Monday, you know, quarterback the Sunday game when you lose. You're like, well, you did it wrong. You didn't have the game plan that would win. And so if we had done this and this and this, we would have had a better chance of winning. Well, you're right, you would have had a better chance of winning because we know in hindsight that you lost. But how do we evaluate? I mean, you've got to present to us a compelling reason that the jury would have found something differently. And I know that's what you're trying to do here, but it's not clear to me that any of these defenses that perhaps would have given him a better chance of getting an acquittal would have actually been successful. But the measure is not for you to know that it would have won. No, I think we do have, wait, the standard is important here. I think it is that we think that it has to have a reasonable chance that a jury would have come to a different result. That's right. And that's what I'm struggling with. And I need to show you by a preponderance of the evidence that that's likely. Right. It's the lowest standard there is. I understand deference. I'm a trial lawyer. I understand deference. And I understand looking at it, you know, back behind the time period. But here you also have two declarations from counsel that set out in detail what it is that they did wrong, why they weren't prepared, what they would have done that was different. Now, you can't possibly imagine what a jury would have done. But you can certainly say, you know, God, the guy didn't even get a defense on the lung show, and he didn't even, and he had evidence introduced of these two gruesome killings in Mendocino County that had nothing to do with this case. As to the two killings, Chong's counsel actually relied on the gruesomeness of those killings. And you couple that with the fact that the government repeatedly said he is not charged with being involved in those killings, right? So I don't understand how we can conclude from those two things that this jury could have, I mean, the whole point was that you take the couple of the fact that the government says we're not charging him with being involved in those, and then you couple that with his own counsel's reliance on the gruesomeness of them to say that's something that this community leader was not involved with. The jury was, that's a plausible strategy for his counsel to have pursued with those. It's only plausible because he didn't do a motion to exclude it. I want to reserve some time, so if I could maybe reserve a minute and a half. Yeah, if we take you over, we'll give you more time. Okay. They filed a motion to exclude the evidence prior to the third indictment. That was not even ruled on. It was deferred because there were no charges. They then get the third indictment. They don't ask for a continuance, and they move forward in the trial. They don't file another motion to exclude the evidence of Khan and Chen. They get into the trial, and the trial goes on. At the end, after you haven't done anything about it, you've got to make the best of what you've got. I guess what I'm struggling with is if the jury has shown evidence of very gruesome murders, and they're repeatedly told these murders, Chong is not charged with being involved in these murders, then are we supposed to assume that the jury just ignores that? But they weren't repeatedly charged. In November 9th, 2015... Mr. Chong is not charged with being involved in the actual murder of Kong. On November 9th, 2015, in the opening statement that the U.S. attorney gave, he talked a little about you'll hear Raymond Chow with conversations with Andy Lee, and Andy Lee goes back to Raymond Chow and says, hey, this Jim Kat Tong thing, you still want it done. Raymond says it's been handled. Kong, you will hear, eventually ends up dead in the front of a minivan in Mendocino County. Yeah, he does say that, and he later says he's not being charged at the actual murder, and he says, later on, he says, as I mentioned previously, there should be no confusion on anybody's part. Indictment does not charge Chow with committing the September 2013 murder of Kong or his wife, or with conspiring or participating in that murder. You're asking us to just assume, I guess, that the jury ignored that and that's it. Yes, if I can finish, I think I can answer that. And so, and then, that's the statement that's made, he's killed in October 2013, and then you'll hear that in March 24, arrests were made, search warrants were executed, charges were brought, encompassing all of this activity. And that brings us to where we are sitting here today. That's the opening statement. That's the only thing that they say about Chong and Kong, Chen and Kong. That's it. They don't say, and he's not charged with it, and that his conspiracy is over or anything else. 57 days later, it comes up again, and it comes up, and it's actually into some 22 pages into the argument that's first given. And that's when it starts with, not what the US attorney gave in its 28J motion, because the full statement reads this, and I should clarify here, in case there's any confusion about this, and then talks a little bit about the Kong situation. 87 pages later in the argument, he says, there should be no confusion on anybody's part. If it is so clear, why does the US attorney have to stand up and tell the jury? But just to be clear, because I want, so your view is that notwithstanding those two, those two statements that the US attorney, that are pretty clear statements saying he's not charged with the, that the jury, your argument depends on the fact that the jury nonetheless concluded that he was involved with those murders? No, what I'm saying is, is that there was at no time during the trial what this is made exceedingly clear in the argument. And then the argument, which it's done two more times, one time 97 pages and another two page later where they say, look, no confusion here, we want you to know, he's not charged with your murders. But the language is, as far as the evidence showed. So now, a jury's given an instruction. The words of that person doesn't mean a thing. The words of that person doesn't mean a thing. There's no instruction given. There is no stipulation made. There is no evidence presented that he did not have anything to do with those killings. And they should have, because AUSA, for instance, says at some point in time, we put it on because they didn't object. You said there's no evidence provided that he did not have anything to do with those killings, but the, but he literally, the prosecution literally said, we have not charged him, the indictment is not charging him with committing the murder, or with conspiring or participating in the murder. So why would there be any evidence one way or the other if the prosecution, there's no need for the defense to put on that evidence, because the prosecution's just claiming that it's, that he's involved in it. Then what does the jury do with it? Why did we get all that evidence as we sat back and deliberated for three solid days? Why did we get all the evidence of Connie and Chen if he didn't have anything to do with it? And that, and the, AUSA said, as the evidence showed. Ah, so they have other evidence that they didn't show? And there's another statement in there by the U.S. attorney at the very end where he says, the government has not alleged that Kong was killed. Well, I think part of the reason that the jury got that evidence is because it's plausible that his counsel thought that the gruesomeness of these murders made it seem like maybe they were killed because of, you know, there was a robbery or something like that. And, and with the, and you couple that with the government conceding that Chao wasn't involved in it, then I could, you could understand why the defense counsel might think it's actually helpful to show that this horrible stuff's going on that Chao has nothing to do with. That the government's acknowledging he has nothing to do with. He doesn't make that decision until he does his argument. You know, if he'd made the decision early on saying, yeah, I want the Kong and Chenna evidence coming in because I'm going to show that that was really done by somebody, you know, in a brutal fashion. That's a 2014 crime or 2013 crime. He's charged with a crime that ends in 2012. So they're not connected. They wouldn't have been introduced. And the last words are, they are clearly leads that are being pursued, but it's arguing against an argument we never made. So the jury is left to think, aha, there are charges out there. We don't know. And we're told not to trust him and not to trust him to look at the evidence. And dang, if we don't have some of the most gory, gruesome photographs of a murder that had nothing to do with anybody. I don't want to interrupt your roll, but do you want to reserve your five minutes over? Yes, please. Yeah, thank you. Good morning, Your Honors, and may it please the court. Ross Mazur on behalf of the United States. The defendant has not met his burden to show either prejudice or deficient performance under the objective standard for ineffective assistance. Let me start with what I think are the key points raised by defense counsel. First, the continuance, the decision not to seek a continuance. Second, not moving to exclude evidence. I mean, the continuance does seem to be problematic. At least in the sense of it's hard to understand what the strategic decision would have been not to seek a continuance when the third indictment came down. I mean, you would agree with that, right? Or do you think, no, this, there's just, it was not substandard performance? No, I think, Judge Nelson, I don't think it was substandard at all. And in fact, even in Mr. Briggs' declaration, he gives us the strategic considerations. He said there were discussions among the defense team, internal discussions, that if they delayed, additional cooperators could come forward about the murder, about the murder and the murder conspiracy. And even if it weren't additional cooperators, the government could continue to investigate. And we know from the evidence that Chau presided over a sprawling criminal enterprise. If that investigation continued, of course the government would have found additional evidence and possibly more cooperators. So even in Briggs' declaration, he acknowledges that the decision not to seek a continuance was strategic. And we know that under Strickland, strategic decisions are virtually unchallengeable. Now, it may be that the defense would have gotten some benefit from having that additional time. And it's easy to say that in hindsight. But at the time, the defense was weighing that potential benefit against the risk that this other evidence would come forward. I want to make sure I understand the timeline. After the third superseding indictment was filed and added the charges, did the government itself seek a continuance as well at any point? No, Your Honor. The government did not seek a continuance. And Mr. Briggs, in the thorough colloquy with the court, correctly stated that after reviewing the discovery, the case turned on cross-examining cooperators, not on any forensic evidence that might require a continuance for the defense to retain an expert witness. The court addressed Mr. Chau specifically. And he assured the court that he absolutely wanted to proceed without a continuance and that he understood the significance of the third superseding indictment that added the murder and the murder conspiracy charge. And of course, the defense already knew about the murders. They didn't learn about that for the first time in the superseding indictment, which is exactly why they had moved in limine to exclude references to the murder and the murder conspiracy before those were actually part of the case. Let me move on to the second point that the defense counsel stressed just now, which was the decision not to move to exclude evidence of the actual murder of Jim Tatkong and his romantic partner, Cindy Chen. So just to be clear, the challenged evidence was that about 18 months after the end of the charged conspiracy, Kang and Chen were murdered by Wing Wa Ma, a man with no connection to Mr. Chau, up in Mendocino, over an unrelated marijuana operation. Why would the defense want to exclude that? As Judge Van Dyke, you know, mentioned in his question, the decision for the defense to focus on that was absolutely strategic. Mr. Serra argued in both his opening and his closing that Kang, you know, was killed by someone for unrelated reasons, that the actual murder was separate from the murder conspiracy. In fact, he focused on the actual murder almost to the exclusion of the conspiracy to try to distract from it or maybe for the jury to ask themselves, why were we here prosecuting the man who didn't kill Jim Tatkong? So it was, so the evidence of the murders were used strategically. In any event, there was no prejudice. The government told the jury at least four times in closing argument that Mr. Chau was not charged with and there was no evidence that he was involved with the actual murders. In fact, you know, to respond to a point made by defense counsel, two of those statements came in the government's rebuttal argument probably to respond to what Mr. Serra had said in closing when he focused on the actual murders. So in other words, in rebuttal, the government had to say, despite Mr., you know, Serra's focus on the murders, what you're here to deliberate about is the murder conspiracy. And, you know, as to defense counsel's suggestion that the government, you know, suggested an opening statement that Chau had committed the murders, that's just not true. The openings both on the government side and the defense side told exactly the same story, which was that using the same evidence, just with different emphasis, which was that Chau had agreed and entered into a conspiracy to have Kong murdered because they were rivals for the leadership of Hop Singh. That Chau called off the conspiracy because he realized that once he publicly withdrew his support for Kong and kicked him out of Hop Singh, that Kong owed a lot of people money. He had a lot of other enemies who would do the job for him. The government introduced evidence, recorded conversations, where Chau was talking to Jordan and learning about the murder in real time. He doesn't even get all the details right because he was just informed about this and says, you know, I knew this would happen when I called off the hit. I knew he had other enemies that would take care of this. And that's included, the transcript of that conversation is included at 3 SCR 393 to 395. What about, you know, one of the arguments is the inexperience of his counsel generally, which if I recall correctly, I read the opening brief like, wow, these guys do really seem inexperienced. Then I read the government's brief. It's like, well, no, he had a really, really experienced counsel, but it does seem like that counsel's involvement in the case, and I forget his name, but some really experienced sort of the lead person, was involved, heavily involved. It sounded like, and then wasn't very involved for part of the case, and then maybe involved later. What do we do with that? The fact that other than that person whose involvement was on again, off again a little bit, at least according to their allegations, the rest of his team, defense team, seems pretty inexperienced, and one of them had a drug problem or something like that, right? So Judge VanDuck, I wouldn't quite agree with the characterization that lead counsel Tony Serra was, his involvement was on again and off again. He spearheaded the first two months of pretrial litigation, and then it's true, he turned over primary responsibility for pretrial litigation to Mr. Briggs, who was relatively inexperienced, though he had another attorney and some support staff working with him and helping him. But Mr. Serra was the lead attorney at trial. He conducted the defense opening, the defense closing argument. He cross-examined three of the four cooperating witnesses. He conducted most of the trial, and I think the record shows that Mr. Serra was a nationally recognized attorney, and even the district court, who had presided over the entire proceedings, mentioned toward the close of the case that he had seen Mr. Serra perform consistent with his reputation, and moreover that there was nothing any of the defense attorneys could have done that would have changed the outcome of the case. I think the last thing that defense counsel just focused on was Mr. Chau's decision to testify, but the claim there is that if Mr. Chau had not lied under oath, then he wouldn't have been impeached with some of his prior statements. That claim is foreclosed as the prejudice by this court's decision in United States v. Day, and this case is actually stronger than Day, because while Day foreclosed an ineffective assistance claim on prejudice, here there was no deficient performance because an attorney doesn't have an affirmative obligation to advise their client not to commit perjury. That's part of the oath that any witness swears in testifying, and it's also worth noting that in his own declaration, Mr. Chau said that he discussed his criminal past with Mr. Serra in preparing to testify. I thought his argument was a little more nuanced than that, that wasn't that tied to the continuance to say if it's out of continuance, there would have been more time to flesh these things out, and then, I mean, there's still a problem. You've got a whole chain of events that are somewhat speculative as to what would have happened in this alternate universe, but I don't, I didn't think he was just saying, oh, it was deficient because he lied. I thought it was tied to the failure to seek a continuance. Am I wrong about that? I didn't read those two things as necessarily tied, but it wouldn't change the outcome. The continuance would have given the defense more time, but it was Mr. Serra who conducted a three-day direct examination of Mr. Chau, and Mr. Serra submitted a two or three-page declaration for the 2255 motion, and he never said that he needed more time. He prepared Mr. Chau to testify. Mr. Chau said, in his declaration, said that he discussed his criminal past with Mr. Serra. So the decision to seek a continuance wouldn't have any effect on his testimony. I think it's worth noting that I think defense counsel just acknowledged the motion to suppress would not have been effective. With respect to Pius Lee, the other suspect, Mr. Serra elicited a trial and then emphasized in closing arguments the three main points, which were that Lee was with Leung at the time of his death, that Lee had a financial dispute with him over a restaurant, and that Lee immediately fled the country and never came back. So Mr. Serra was able to make all of the points showing that Lee was an alternative suspect. I think, you know, prejudice, just closing on this, prejudice is especially unlikely in this case for two reasons. One is that the bulk of the evidence came in through recorded conversations, which were indisputably admissible. And second, because there were four cooperating witnesses, and the principal points impeaching their credibility were brought out on direct and on cross almost ad nauseum. One is that all four of them had lengthy, extensive criminal records, some of which included cold-blooded murders. And second, that all of them were testifying in the hope of leniency in their own cases. In opening, the government counsel even previewed, you know, to the jury, you're not going to like these witnesses. They're not good people. So the additional few points that counsel argues could have been used to impeach those witnesses couldn't possibly have made any difference. Unless the... I do have a question. I want to go back to my question about the timeline on the continuance, because I had read this. I was confused by the long footnote in Judge Breyer's order about what happened with the continuance, and he references the government subsequently moved for a continuance. That motion appears to be a motion on the 14th, and then it's denied on the 15th, which is the day also of the third superseding indictment. Do I have that correct? Your Honor, I'm sorry, but I'm not sure about that. What was the basis of the government's motion filed right before, for a continuance right before the third superseding indictment was filed? I'm sorry, I don't have the answer to that. It was denied the next day. I know the government understood after the third superseding indictment that the defense had a right to a continuance if they wanted one. Both the court and the government... Was the government itself seeking one, saying it needed more time in light of the third superseding indictment? Was that the basis? Is that what he's discussing in this footnote? I don't believe the government ever moved for a continuance after the third superseding indictment. I'm not sure about the reference to a motion for a continuance just prior to that. That's possible. I don't recall offhand, but it certainly wouldn't impact the defendant's claim that the failure to seek a continuance was prejudicial. The packet shows a 1065 emergency motion to continue jury selection and trial date by USA as to Kwok Chung Chow. And then that's apparently the motion that Judge Breyer is referring to in this long footnote that he says he denied on the 15th. Your Honor, I just don't remember the basis for that motion. It's possible the government was seeking it because it was bringing the third superseding indictment, but Judge Breyer seemed to think it was relevant to the tactical issue. That's why I'm raising this. I'm sorry, would you mind repeating that? Judge Breyer seemed to think it was relevant to the first prong of Strickland, whether this was a reasonable, tactical decision, because I read this footnote as saying, well, the government came in wanting a continuance. And so that sort of suggested that, you know, reasonable trial counsel would say, let's jam the government. Absolutely, Your Honor. And I'm sorry, I misunderstood your question earlier. In fact, Judge Breyer, who rested the denial of the 2255 on the prejudice prong alone, did on a few occasions comment on deficient performance. And when it came to the continuance, this was one area where he said, counsel, not only was there no prejudice, but counsel were not deficient in not seeking a continuance. That was a reasonable strategic decision. So I absolutely agree with your point, Your Honor. Unless there are any further questions, the government would ask you to affirm the judgment. Thank you. We'll give you two minutes for rebuttal. Thank you, Your Honor. Can you clarify this issue about what happened with the government's request for a continuance right around the time of the third superseding indictment? I don't know exactly what the details were about it, but I know that it was offered as well to the defense, and the court said, if you want it, of course you can have it. I can't give you the details of that at this point in time. But what about the argument that was made that there were actually, they were worried that a continuance would have helped the government? I mean, whether that was the basis for the continuance or not, there does seem to be a declaration that suggests that that was a consideration, and if that was a consideration, then it may not be deficient performance. The government didn't need a single additional witness. When they went to that grand jury and got that third superseding indictment, they used each one of those cooperators, and they came in and they testified, and the government didn't break water for a second about going forward, and they put on the same case as they would have. The only one that would have benefited from a continuance was Mr. Chow, because counsel then could have done things such as explain to him about the fact that if you go to trial now and you testify, and we don't litigate the Chong discovery, the government is going to impeach you with one or two murders and the trip to Boston, et cetera. And Chow would have said, yes, fine, then let's continue it. Tony Serra had a limited role in the case up until trial. He did do some pretrial litigation, but at the hands of the other individuals. He then was gone because he was doing another trial or another other trials. He came in and relied upon what workup had been done and what pretrial litigation had been handled by Briggs and the other folks. So that when, and I know Mr. Serra well, when he comes in to do an examination of a witness, he has the file and the documents. Mr. Briggs makes clear in his declaration they didn't provide that stuff to him. So he didn't know what to do. Then other than the standard, these are all cooperators. These are all liars. This is the way it goes. And the government says, yes, they're bad people, et cetera. Well, that's exactly what he said about his own client when he put his own client on and didn't have a limitation and understanding about what that plea agreement was and the separate immunity agreement that was put together by Mr. Dressler that would have prevented Chow from having to testify. Chow was caught. Council, we have your argument. You're over. You've done a great job defending your client. Oh, I went over. Yeah, no, red means you're on our time. So thank you. Thank you, council. Thank you to both council for your arguments in the case. The case is now submitted.
judges: NELSON, COLLINS, VANDYKE